1  | JILL F. TEITELBAUM, Bar No. 184469
2  | BRAGG & KULUVA
   | 555 S. Flower Street, Suite 600
3  | Los Angeles, California 90071
   | Tel:  (213) 612-5335
4  | Fax:  (213) 612-5712
   | Email: jteitelbaum@braggkuluva.com
5
   | Attorneys for Defendant
6  | SYNOVA, INC.

7

8
                    UNITED STATES DISTRICT COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                         WESTERN DIVISION
11

12  | MOHAMMAD HAJIANPOUR, an                CASE NO. CV12-1765 CAS (RZX)
    | individual,
13  |                                         **NOTICE OF MOTION AND MOTION
    |               Plaintiff,                OF DEFENDANT SYNOVA, INC. FOR
14  |                                         SUMMARY JUDGMENT/PARTIAL
    |          vs.                            SUMMARY JUDGMENT;
15  |                                         MEMORANDUM OF POINTS AND
    | SYNOVA, INC. DBA SYNOVA INC, a          AUTHORTIES; DECLARATIONS OF
16  | Delaware Limited Liability Corporation; JILL F. TEITELBAUM, TIMOTHY
    | and DOES 1 - 10, inclusive              MANNEY, TERRI ARROWOOD AND
17  |                                         TODD GREEN IN SUPPORT
    |               Defendants.               THEREOF.**
18
19  |                                         Date:  November 5, 2012
    |                                         Time: 10:00 a.m.
20  |                                         Courtroom: 5
21  |                                         Honorable Christina A. Snyder
22  |                                         Complaint Filed:  January 23, 2012
    |                                         Removed:          March 1, 2012
23  |                                         Trial Date:       January 8, 2013
24
25
26
27
28
                                       1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on November 5, 2012 at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 5 of the above entitled court, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendant Synova, Inc. ("Synova") will move the Court for an order granting summary judgment/partial summary judgment.

This motion will be made pursuant to Federal Rule of Civil Procedure 56 on the grounds that:

1.    The uncontroverted evidence shows that Plaintiff's first cause of action for Disability Discrimination fails as a matter of law because Defendant lacks evidence of a legitimate, non-discriminatory reason to terminate Plaintiff and there is no evidence of pretext. Finally, Plaintiff's first cause of action fails as Defendant did not know, or have reason to know, of any discrimination.

2.    The uncontroverted evidence shows that Plaintiff's first cause of action for Failure to Accommodate a Disability fails as a matter of law because there is no evidence that Defendant failed to provide Plaintiff a reasonable accommodation. Finally, Plaintiff's first cause of action fails as Defendant did not know, or have reason to know, of any failure to accommodate.

3.    The uncontroverted evidence shows that Plaintiff's first cause of action for Failure to Engage in the Interactive Process fails as a matter of law because there is no evidence that Defendant failed to engage in the interactive process with Plaintiff. Finally, Plaintiff's first cause of action fails as Defendant did not know, or have reason to know, of any failure to engage in the interactive process.

4.    The uncontroverted evidence shows that Plaintiff's second cause of action for Medical Leave Discrimination/Retaliation fails as a matter of law because Plaintiff lacks evidence of causation and Defendant had a legitimate, non-discriminatory, non-retaliatory reason to terminate Plaintiff and there is no evidence of pretext. Finally,

Plaintiff's second cause of action fails as Defendant did not know, or have reason to know, of any medical leave discrimination/retaliation.

5.     The uncontroverted evidence shows that Plaintiff's third cause of action for Retaliation in Violation of FEHA fails as a matter of law because Plaintiff lacks evidence of causation and Defendant had a legitimate, non-discriminatory reason to terminate Plaintiff and there is no evidence of pretext.  Finally, Plaintiff's third cause of action fails as Defendant did not know, or have reason to know, of any retaliation.

6.     The uncontroverted evidence shows that Plaintiff's fourth cause of action for Failure to Prevent Harassment and Discrimination fails as a matter of law because Plaintiff has no evidence of discrimination or harassment.  Finally, Plaintiff's fourth cause of action fails as Defendant did not know, or have reason to know, of any discrimination or harassment.

7.     The uncontroverted evidence shows that Plaintiff's fifth cause of action for Wrongful Termination in Violation of Public Policy fails as a matter of law because Plaintiff lacks evidence of causation and Defendant had a legitimate, non-discriminatory, non-retaliatory reason to terminate Plaintiff and there is no evidence of pretext. Finally, Plaintiff's first cause of action fails as Defendant did not know, or have reason to know, of any discrimination or retaliation.

8.     The uncontroverted evidence shows that Defendant must prevail on its Fifth Affirmative Defense as to punitive damages because there is no clear and convincing evidence that Defendant is guilty of malice, fraud, or oppression.

/ / /

/ / /

/ / /

/ / /

/ / /

3

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY
JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

This motion will be based on this Notice, the Memorandum of Points and Authorities, the Declarations of Terri Arrowood, Tim Manney, Todd Green and Jill F. Teitelbaum, filed and served herewith, the Separate Statement of Undisputed Facts filed and served herewith, the papers and records on file herein, and such oral and documentary evidence as may be presented at the hearing of this motion.

DATED: October 5, 2012

BRAGG & KULUVA

By: _____

JILL F. TEITELBAUM
Attorneys for Defendant
SYNOVA, INC.

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY
JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION…………………………………………..     1

II.    FACTUAL BACKGROUND…………………………….     2

       A.     Synova…………………………………………...     2

       B.     Plaintiff's Employment and Injury………………………     4

       C.     Plaintiff's Termination…………………………………...     6

III.   LEGAL ANALYSIS………………………………………     8

       A.     Synova Was Plaintiff's "General" Employer, and
              Therefore is Only Liable for Its Own Discrimination,
              and/or for Discrimination about which it knew or
              Should Have Known…………………………………..     8

       B.     In Addition to Synova's Lack of Knowledge,
              Plaintiff's Claim for Disability Discrimination Fails
              Because: 1) Plaintiff Was Not Perceived to be Disabled
              at the Time of Termination; 2) Plaintiff Cannot Establish
              Causation; and 3) Defendant Had a Legitimate,
              Non-Discriminatory Reason for his Termination, and
              There is no Evidence of Pretext. …………………………     11

              1.     Plaintiff Cannot Prevail on His Disability
                     Discrimination Claim Because He Was Not
                     Perceived to be Disabled at the Time of
                     His Termination. …………………………………     11

              2.     Plaintiff Has Offered No Evidence to
                     Support His Claim That He Was Terminated
                     "Because of" His Disability. …………………………     12

              3.     Plaintiff Has Offered No Evidence to
                     Support His Claim That He Was Discriminated
                     Against for Taking Medical Leave. ……………...     14

i

PAGE

4.   Defendant Had a Legitimate, Non-Discriminatory
Reason for Terminating Plaintiff. ......................   14

C.   Plaintiff's Claim for Failure to Accommodate Fails
Because there is no Evidence that Synova Failed
to Accommodate Plaintiff. ....................................   15

D.   Plaintiff's Claim for Failure to Engage in the Good
Faith Interactive Process Fails Because there is No
Evidence that Synova Failed to Engage in the
Interactive Process. ...........................................   16

E.   In Addition to Synova's Lack of Knowledge,
Plaintiff's Causes of Actions for Retaliation Fail
Because: 1) Plaintiff Cannot Establish Causation;
and 2) Defendant Had a Legitimate,
Non-Discriminatory Reason to Terminate and
There is no Evidence of Pretext. .............................   17

1.   Plaintiff Has Offered No Evidence to
Support His Claim That He Was Retaliated
Against "Because" he Requested and
Took Medical Leave. ..................................   17

2.   Plaintiff Has Offered No Evidence to
Support his Claim that he Opposed
Violations of FEHA..................................   18

F.   In Addition to Synova's Lack of Knowledge,
Plaintiff's Cause of Action for Failure to Prevent
Harassment and Discrimination Fails for the Same
Reasons as the Discrimination Claim. ......................   19

G.   In Addition to Synova's Lack of Knowledge,
Plaintiff's Cause of Action for Wrongful Termination
in Violation of Public Policy Fails for the Same
Reasons that His First, Second and Third Causes
of Action Fail. ...............................................   19

Table of Contents/Table of Authorities

**PAGE**

H.   Plaintiff Cannot Recover Punitive Damages
Because There is No Clear And Convincing
Evidence That Defendant is Guilty of Malice,
Fraud, or Oppression. .......................................   20

IV.   CONCLUSION.....................................................   21

# TABLE OF AUTHORITIES

## STATE CASES                                                                PAGE

*Aquino v. Superior Court,*
    21 Cal.App.4th 847 (1993)…………………………………………… 20

*Bagatti v. Dept. of Rehab.,*
    97 Cal.App.4th 344 (2002) ………………………………………… 15

*Broadman v. Comm'n on Judicial Perf.,*
    18 Cal.4th 1079 (1998)……………………………………………… 20

*College Hospital v. Superior Court of Orange County,*
    8 Cal.4th 704 (1999) ……………………………………………… 20

*Deschene v. Pinole Point Steel Co.,*
    76 Cal.App.4th 33 (1999). ………………………………………… 11

*Guz v. Bechtel National, Inc.,*
    24 Cal.4th 317 (2000). ……………………………………………… 15, 18

*Jensen v. Wells Fargo Bank,*
    85 Cal.App.4th 245 (2000) ………………………………………… 15

*In Re Angelica P.,*
    29 Cal.3d 908 (1981) ……………………………………………….. 20

*Nelson v. United Technologies,*
    74 Cal.App.4th 597 (1999) ………………………………………….. 13

*Riley v. Southwest Marine, Inc.,*
    203 Cal.App.3d 1242 (1988) ……………………………………… 8

*Rowe v. Sup. Court,*
    15 Cal.App.4th 1711 (1993) ……………………………………… 20

*McRae v. Dept. of Corrections and Rehabilitation,*
    142 Cal. App. 4th 377 (2006). …………………………………… 17, 18

*Mathieu v. Norrell Corporation,*
    115 Cal. App. 4th 1174 (2004). …………………………………… 9

## FEDERAL CASES                                                    PAGE

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986). ……………………………………………     20

Caldwell v. ServiceMaster Corp. and Norrell Temporary Services,
    966 F. Supp. 33 (D.D.C. 1997) …………………………………   9, 10

Caudill v. Farmland Ind., Inc.,
    919 F.2d 83 (8th Cir. 1990) ……………………………………...     13

DeWitt v. Lieberman,
    48 F. Supp. 2d 280 (S.D.N.Y. 1999) …………………………….     9

Hodgens v. General Dynamics Corp.,
    144 F.3d 151 (1st Cir. 1998) ……………………………………     14

Horn v. Duke Homes, Inc.,
    755 F.2d 599 (7th Cir.1985)……………………………………..     9

Magnuson v. Peak Technical Services, Inc.,
    808 F.Supp. 500, 513 (E.D. Va. 1992)………………………………     9

Meritor Savings Bank v. Vinson,
    477 U.S. 57 (1986…………………………………………………     9

Nelson v. Pima Comm. College,
    83 F.3d 1075 (9th Cir. 1996) …………………………………………     13

Payne v. Norwest Corp.,
    113 F.3d 1079 (9th Cir. 1997). …………………………………     17

Taub v. Fleishman-Hillard, Inc.,
    No. C-04-2316 VRW, 2005 WL 2988755, *23
    (N.D. Cal.Nov. 7, 2005) …………………………………………     19

Ujagar v. Campbell's Soup Co., No.
    CIV. S-05-674 LKK/DAD, 2006 WL 3762106, *5
    (E.D.Cal. December 20, 2006) …………………………………..     12

Williams v. Grimes Aerospace Company,
    988 F. Supp. 925 (D.S.C. 1997) …………………………………   9, 10

**STATUTES**                                                                    **PAGE**

*Enforcement Guidance: Application of EEO*
*Laws to Contingent Workers Placed by Temporary*
*Employment Agencies and Other Staffing Firms,*
EEOC Notice Number 915.002, number 8 (12/3/1997)……………….     9

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff Mohammad Hajianpour ("Plaintiff") has asserted five causes of action against Defendant Synova, Inc. ("Synova"), all stemming from Synova's placement of Plaintiff at an American Express Travel Services data center ("Amex").  In 2005, Synova, an IT staffing firm, placed Plaintiff at Amex through a contract it had with IBM.  Eventually, Hewlett Packard ("HP") was awarded the contract originally held by IBM, and Synova transferred Plaintiff's employment to HP, though Plaintiff remained physically employed at Amex throughout. HP had a two-year limitation on all contingent, or temporary, workers, such as Plaintiff.  Plaintiff was let go by HP two years from the time HP took over the contract with Amex.

Plaintiff's two year position was set to expire when Plaintiff was on medical leave following surgery for a Worker's Compensation injury to his shoulder. Accordingly, Plaintiff was let go while on leave.  It is clear from Plaintiff's deposition testimony that he has no evidence whatsoever to support any of his allegations.  He bases his entire lawsuit on the fact that he was terminated following a work-related injury and while on leave. This lone fact, however, gives no inference of unlawful discrimination.  Plaintiff's termination was based entirely on HP enforcing its two-year employment limitation.

Moreover, even if Plaintiff was somehow discriminated against by HP, Synova, Plaintiff's "general employer," *would only liable for the discriminatory acts in which it participated, and/or if it knew or should have known about HP's alleged discrimination*, and failed to undertake prompt corrective measures within its control.

Synova can establish that Plaintiff's termination was legitimate and non-discriminatory, and, even if HP did somehow discriminate against Plaintiff, Synova was not aware, nor should Synova have been aware, of such discrimination.

1

Accordingly, and because Plaintiff's claims are based on mere speculation, summary judgment should be granted in its entirety.

## II.  FACTUAL BACKGROUND

### A.  Synova

Synova is an information technology professional services company headquartered in Southfield, Michigan, which provides IT staffing, outsourcing and consulting. (SOF No. 1.) Synova hires two types of employees: those in the Synova corporate offices who provide infrastructure and support, of which there are twenty-three, and those who are contracted out or "staffed" to work at various client companies, of which there are currently four-hundred and sixty-eight.  The latter are considered to be "contingent employees." (SOF No.1.)

After Synova makes an IT staffing placement with a client company, Synova continues to exercise all Human Resource and payroll functions for its contingent employees.  (SOF No. 3.) Accordingly, Synova employs the contingent employees, however it does not control the day-to-day conditions of its contingent workforce. (SOF No. 3.)

In 2005, Synova had a contractual relationship with IBM, through which it placed its contingent employees at American Express ("Amex").  (SOF No. 4.) It was through this contractual relationship that Plaintiff was placed at a Southern California Amex Travel Services data center. (SOF No. 4.)

Sometime after 2005, Electronic Data Systems ("EDS") assumed responsibility from IBM for the contingent workers supplied by Synova to Amex (SOF No. 5) and all but two of Synova's contingent employees at Amex were released. (SOF No. 9.) Accordingly, Synova began working with EDS in order to continue to manage its two contingent employees working at Amex locations. (SOF No. 5.)

/ / /

---

2

In May 2009, Hewlett Packard ("HP") purchased EDS and Synova's two contingent workers (Plaintiff, who worked in Southern California, and James Zedaker, who worked at an Amex Travel Services data center in Arizona) became subject to HP's Standard Services Agreement for Agency Contractor Services, entered into between HP and Synova. (SOF Nos. 6, 9.)  The contingent workforce supplied by Synova to HP was managed externally by Pinnacle Technical Resources ("Pinnacle").  (SOF Nos. 6, 15.) Internally, HP's contingent workforce is managed by HP Global Agency Contractor Program. (SOF No. 21.)

Accordingly, after May of 2009, the layers of Plaintiff's employment were as follows: Plaintiff worked at an Amex physical location (SOF No. 11); Synova performed HR functions and payroll for Plaintiff (SOF No. 3); HP directed and supervised Plaintiff's work (SOF No. 30); HP Global Agency Contractor Program monitored Plaintiff employment internally (SOF No. 21); and Pinnacle managed the contingent workers externally. (SOF No. 6, 15.)

HP's Agreement with Synova sets a two-year maximum length of service for which HP's contingent workers can serve.  (SOF No. 7.) Once a contingent employee has served in an HP position for two years, he or she must stop working for at least one hundred days before being eligible to work for HP again. (SOF Nos. 7, 8.)

Synova had only two contingent employees working at Amex Travel Services data centers that were transferred to HP: Plaintiff and James Zedaker. (SOF No. 9.)  In May 2009, after HP purchased EDS, the start dates for both Plaintiff and Mr. Zedaker were "reset" to May 1, 2009, so that the two-year limitation[1] would begin running from that point forward[1].  (SOF No. 13.)

---

[1] Unfortunately, it appears as though HP's length of service policy for contingent workers was not clearly communicated to either Plaintiff or Mr. Zedaker at the time.

**B.    Plaintiff's Employment and Injury.**

In 2005, when Synova began its employment relationship with Plaintiff and he was placed, through IBM, at Amex Travel Services data center (SOF No. 4), Plaintiff performed quality control checks on desktop and laptop computers, performed hardware upgrades and system repairs, implemented new software, and provided technical computer support, among other IT-related duties. (SOF No. 10.)  Synova paid Plaintiff and provided HR support, but did not control Plaintiff's day-to-day job functions. (SOF Nos. 3, 32.)  Plaintiff never met face-to-face with anyone at Synova (SOF No. 31), and understood that Synova could not assist him with the day-to-day functions of his job. (SOF No. 32.)

In 2009, HP took over supervision of Plaintiff's job duties and  HP's Sharon Cook became Plaintiff's supervisor. (SOF No. 30.)

Despite the change in supervision, Synova continued to exercise all HR and payroll functions relating to Plaintiff's position.  (SOF No. 3 .)  Plaintiff's main contact at Synova was Terri Arrowood, Synova's Business Development Manager. (SOF No. 33.)

On May 4, 2010, while at work, Plaintiff injured his right shoulder. (SOF No. 34.) On June 24, 2010, Plaintiff contacted Ms. Arrowood to inform her of his injury. (SOF Nos. 16.) Ms. Arrowood instructed Plaintiff to contact Camille Love, in Synova's HR Department. (SOF No. 35.) After Plaintiff reported his injury, Synova promptly worked with Plaintiff to complete the necessary Workers' Compensation paperwork and open a claim for Plaintiff with its insurance carrier. (SOF No. 36.) When Plaintiff reported his injury to Synova, he did not indicate that he could not continue working. (SOF No. 37.) After filing his claim, Plaintiff began receiving treatment. (SOF No. 38.)

/ / /

/ / /

4

While Plaintiff claims that he had difficulty performing his job duties after his injury, at no point did he inform anyone at Synova that he needed any accommodations or assistance. (SOF No. 39, 41, 43.)  While Plaintiff claims that he asked his supervisor, Ms. Cook , for a "helper" to assist him  (SOF No. 40), Plaintiff did not inform Synova that he had made this request, nor did anyone at Synova know about this request. (SOF Nos. 17, 41.)  Though he was not provided with a "helper," Plaintiff claims that one of his co-workers at Amex regularly assisted him with lifting and carrying heavy items. (SOF No. 42.)  Plaintiff admits that he never notified Synova that he was receiving assistance, and even concedes that Synova had no reason to know he was getting such assistance. (SOF No. 43.) Aside from requesting a helper from HP, Plaintiff did not make any other requests for accommodations or assistance. (SOF No. 44.)

Furthermore, despite the fact that in his Complaint he claims that he was denied rest breaks, leave for medical appointments, and medical leave (SOF No. 45), Plaintiff was never denied any requested time off:

> Q.	And just so I understand, anytime you asked Sharon or anyone else for time off for a medical appointment or treatment, they told you it was okay; right?
> A.	It only happened once or twice.
> Q.	And the once or twice when you asked, they told you it was okay; is that right?
> A.	Yes.

(SOF Nos. 46, 47.) Despite this, Plaintiff still tried to schedule all of his medical appointments, including physical therapy, for after his work day, because he "felt bad leaving … the center without any … tech support there." (SOF No. 48.)  Plaintiff's time restrictions for his medical appointments were self-imposed. (SOF No. 49.) He was never told by anyone at either Synova or HP that he couldn't leave work for medical treatments. (SOF No. 50.)  In addition, no one at Synova, HP or Amex ever expressed any displeasure with the fact that Plaintiff had become injured, nor did

5

anyone at any of these companies ever indicate that they thought Plaintiff's job performance was suffering from his injury.  (SOF No. 51.)

On February 8, 2011, Plaintiff had surgery on his right shoulder.  (SOF No. 18.) Except for one or two medical appointments, Plaintiff did not take any time off of work prior to his surgery.  (SOF No. 52.)  Neither of Plaintiff's doctors informed Plaintiff that he needed to take time off prior to his surgery.  (SOF No. 53.)  Likewise, the doctors did not give him any restrictions.  (SOF No. 54.)

Prior to his surgery, Plaintiff admits that no one at Synova, HP or Amex ever discouraged him from taking medical leave.  (SOF No. 55.)  When Plaintiff went out for surgery in February 2011, he notified Synova that he would be out for approximately six to eight weeks.  (SOF No. 56.)  On March 2, 2011, Plaintiff informed Ms. Arrowood that his therapy was continuing through April 1 and he expected to be returning to work on April 11, 2011.  (SOF No. 19.)  At no point did he tell them that he would need additional time to recuperate.  (SOF No. 57.)  On April 8, 2011, when he was terminated, no one at Synova, HP or Amex had any reason to believe that Plaintiff hadn't had the surgery, gotten better and was just about to return to work. (SOF No. 58.)

## C.    Plaintiff's Termination.

On March 2, 2011, while Ms. Arrowood was corresponding with her counterparts at Pinnacle about Mr. Hajianpour's progress, she noted that the two year mark was quickly approaching for both Plaintiff and Mr. Zedaker.  (SOF No. 20.)  Ms. Arrowood sought confirmation that the two-year limit applied to these employees, as they had been "transferred" to HP from IBM/EDS, rather than being brought on as HP workers from the beginning. (SOF No. 20.)   Joanna Bui at Pinnacle responded that she believed that the two year limitation would apply, and that she would confirm.  (SOF No. 20.)

On March 9, 2011, Todd Green (Pinnacle's Associate Director of Shared

Services at that time, who was one of the individuals responsible for managing HP's contingent workers) received an email from someone at HP Global Agency Contractor Program (HP's internal manager of contingent employees), that Mr. Hajianpour's assignment was going to be ending **because of HP's two-year limitation**. (SOF No. 21.)  Although the email suggested Plaintiff be notified that he was coming upon his two-year mark, it seems that did not happen.

One month later, on April 8, 2011, Mr. Green received an email from Todd Robinson, at HP Global Agency Contractor Program, informing him that, effective that day, HP had cancelled Mr. Hajianpour's assignment. (SOF No. 22.) Mr. Green forwarded the email to Ms. Arrowood, who conveyed the information to Plaintiff (who was still on medical leave). (SOF Nos. 23, 24.)  As a staffing agency, when Synova's contingent employees are released from a client, they are released from Synova as well. (SOF No. 25.)  When Ms. Arrowood released Plaintiff, she asked Plaintiff to let her know when he was released to work so that Synova could advise him if there were other job opportunities. (SOF No. 24.)  Just three days later, on April 11, 2011, Mr. Zedaker received an email informing him that he was approaching his expected end date due to the two year limitation. (SOF No. 12.)  Mr. Zedaker was let go on April 21, 2011. (SOF No. 26.)

Six months later, on October 19, 2011, Plaintiff emailed Ms. Arrowood, informing her that he had only just been released to work, with restrictions, and asked if Synova had any available positions. (SOF No. 27.)  Ms. Arrowood reviewed Synova's job listings, and, finding that Synova did not have any clients in Southern California currently needing desktop support, she informed Plaintiff that at that time, there were no positions available. (SOF No. 27.)  At no time did Plaintiff tell Ms. Arrowood that he would be willing to relocate for a position outside of Southern California. (SOF No. 28.)  After their October 2011

7

correspondence, Plaintiff did not contact Ms. Arrowood again to inquire about job openings. (SOF No. 29.)

## III.   LEGAL ANALYSIS

Plaintiff's five causes of action essentially assert two things: that Plaintiff was discriminated against based on his disability, and that he was terminated in retaliation for suffering an injury and/or taking medical leave. It is clear from his deposition testimony that Plaintiff cannot prevail on any of his causes of action.  Plaintiff's claims lack evidence and are entirely speculative.

Moreover, as shown more fully below, Synova, as Plaintiff's "general" employer, is only liable for discrimination if it either participated in the discriminatory act, and/or if Synova *knew or should have known* about the "Special" employer's (i.e., HP's) discrimination and failed to undertake prompt corrective measures within its control.

There can be no doubt that Synova did not participate in any alleged discrimination.  Synova did not make the decision to let Plaintiff go, nor did Synova control Plaintiff's work environment.  It cannot be refuted that HP had a two-year limitation on employment for its contingent workforce, which included Plaintiff. Accordingly, Plaintiff's lawsuit should be dismissed in its entirety.

### A. Synova Was Plaintiff's "General" Employer, and Therefore is Only Liable for Its Own Discrimination, and/or for Discrimination about which it knew or Should Have Known.

Given the lack of control Synova had over Plaintiff's employment, Plaintiff was "jointly" employed by both Synova, his "general" employer," and HP, his "special employer."  Dual employment is well recognized in both California and Federal case law.  "Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers—his original or "general" employer and a second, the "special" employer. *Riley v. Southwest Marine, Inc.*, 203 Cal.App.3d 1242, 1247–

8

1248 (1988); *see also Mathieu v. Norrell Corporation*, 115 Cal. App. 4th 1174, 1183-1184 (2004).  In *DeWitt v. Lieberman*, 48 F. Supp. 2d 280 (S.D.N.Y. 1999) the Court specifically recognized the "bifurcation" of employment in situations such as the one before the Court here.  In *DeWitt*, the Court found that where, as here, a temporary, or contingent, worker was paid by a staffing agency, but the "work hours, work place and work assignments as well as hiring, firing and supervision were controlled by the employment agency's client" both the staffing agency and the staffing agency's client were considered to be plaintiff's employer.  *Id* at 288.

In order for Plaintiff to prevail where, as here, there is joint employment, he must show that Synova participated in the discrimination and/or knew, or should have known, of the discriminatory conduct and failed to take those corrective measures within its control. *See Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms,* EEOC Notice Number 915.002, number 8 (12/3/1997) (http://www.eeoc.gov/policy/docs/conting.html)[2]; *see also Caldwell v. ServiceMaster Corp. and Norrell Temporary Services*, 966 F. Supp. 33,46 (D.D.C.  1997).

The court in *Williams v. Grimes Aerospace Company*, 988 F. Supp. 925 (D.S.C. 1997) offered the following explanation for this standard:

> It is only fair to require the plaintiff show that each defendant she contends committed unlawful discrimination knew of the discriminatory conduct or, at a minimum, should have known of it. ... [T]oday's workforce is composed of increasingly large numbers of part-time employees provided by temporary employment agencies. Discrimination of some form among some of these temporary employment relationships will inevitably occur.

---

[2] While the EEOC Guidelines are intra-agency guidelines not binding on federal courts, they have been recognized and portions have been adopted by courts. *Magnuson v. Peak Technical Services, Inc.*, 808 F.Supp. 500, 513 (E.D. Va. 1992); *see also Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Horn v. Duke Homes, Inc.*, 755 F.2d 599 (7th Cir.1985) (court adopts EEOC strict liability guideline).

> Workplace discrimination will most likely come from the employer
> where a person works, not the temporary agency. As in the instant
> case, the temporary agency often will have little to no daily contact
> with the employee. ... In such a setting, a temporary employment
> agency would have no indication of any workplace discrimination
> without notice from the employee. It would be grossly inequitable to
> hold such an agency liable for discrimination that it was not aware of,
> had no reason to know was taking place, and of which it had no
> control.

*Id.* at 938. In both *Williams* and *Caldwell*, the plaintiffs alleged various forms of discrimination by their "special" employers, but failed to notify their "general" employers of any alleged discrimination. *See Williams* at 938 – 939; see also *Caldwell,* 966 F. Supp. at 46-47. In *Caldwell*, the court noted that prior to termination, plaintiff did not complain to her "general" employer about *any* discriminatory treatment on any basis by the "special" employer. *Id.* Absent any complaints or specific allegations of discrimination, neither the *Willilams* nor the *Caldwell* courts imposed liability on the "general" employer.

Here, as in *Williams* and *Caldwell*, Plaintiff did not notify Synova of any discriminatory or retaliatory treatment. (SOF Nos. 59, 63.) Synova did not know, nor should Synova have known, about any alleged wrongdoing by HP. (SOF No. 63.) In his deposition, Plaintiff admitted that he never discussed any discriminatory or retaliatory treatment by HP with Synova. (SOF Nos. 41, 43, 63.) In fact, Plaintiff testified that prior to his termination, he never told anyone that he thought he had been mistreated in any way because of his injury. (SOF No. 63.) Plaintiff also testified that he never discussed the need for accommodations with anyone at Synova. (SOF Nos. 39, 41, 43.) Simply put, if Plaintiff was being retaliated or discriminated against, Synova did not know, nor should Synova have known about it. Most importantly, Synova had no reason to believe that HP's legitimate explanation for letting Plaintiff go was pretextual, given its awareness of HP's two-year limitation on contingent employees, as well as the fact that the policy was applied equally to other employees. (SOF Nos. 7, 8, 13, 20, 26.) Synova therefore

10

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY
JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

had no obligation to take any corrective measures.

Finally, even if Synova was obligated to place Plaintiff in a different position, which was not the case, once Plaintiff was ultimately released to work, Synova did not have any job orders in which Plaintiff could have been placed. (SOF Nos. 27, 28, 29.)

Accordingly, Synova is not liable for Plaintiff's claims, and respectfully requests that summary judgment be granted in its entirety.

### B. In Addition to Synova's Lack of Knowledge, Plaintiff's Claim for Disability Discrimination Fails Because: 1) Plaintiff Was Not Perceived to be Disabled at the Time of Termination; 2) Plaintiff Cannot Establish Causation; and 3) Defendant Had a Legitimate, Non-Discriminatory Reason for his Termination, and There is no Evidence of Pretext.

In order to establish disability discrimination[3], Plaintiff must prove that: (1) he was disabled (or perceived as such); (2) he was otherwise qualified to do the job; and (3) he was subjected to an adverse employment action (*i.e.*, discharge) because of his disability. *Deschene v. Pinole Point Steel Co.*, 76 Cal.App.4th 33, 44 (1999). Summary adjudication as to Plaintiff's First Cause of Action is appropriate because Plaintiff simply cannot establish that he was perceived as disabled or terminated "because of" any disability.

### 1. Plaintiff Cannot Prevail on His Disability Discrimination Claim Because He Was Not Perceived to be Disabled at the Time of His Termination.

The California Fair Employment and Housing Act ("FEHA") defines a disability as a disorder or condition that "limits" a "major life activity." Cal. Gov't Code

---

[3] Plaintiff has brought two causes of action for discrimination: his First Cause of Action is for Disability Discrimination and his Second Cause of Action is for Medical Leave Discrimination (which he has combined with a cause of action for Retaliation). In order to avoid redundancy, Synova will address both of Plaintiff's discrimination causes of action in this section.

11

§ 12926(k)(B). In order to prevail, the Plaintiff must establish that he was either disabled or *perceived as disabled at the time of his termination. See Ujagar v. Campbell's Soup Co.*, No. CIV. S-05-674 LKK/DAD, 2006 WL 3762106, \*5 (E.D.Cal. December 20, 2006) ("The court first considers whether plaintiff was actually disabled at the time of her termination.")

Here, Plaintiff has asserted that he "suffers, or is perceived" to suffer, "from physical disabilities..." and that Synova discriminated against him based on these disabilities. (SOF No. 60.)  However, there is simply no evidence that anyone at Synova perceived Plaintiff to be disabled at the time he was terminated.  In fact, Plaintiff testified that when he was terminated, on April 8, 2011, no one at Synova, HP or Amex had any reason to believe that Plaintiff hadn't had the surgery, gotten better and was just about to return to work.  (SOF No. 58.)  Moreover, on March 2, 2011, Plaintiff informed Ms. Arrowood that the "latest" he would return to work would be April 11, 2011. (SOF No. 19.)  At no point did he tell anyone at Synova, HP or Amex that he would need additional time to recuperate.  (SOF No. 57.)  There is simply no evidence that Plaintiff was perceived to be disabled at the time of his termination.

### 2. Plaintiff Has Offered No Evidence to Support His Claim That He Was Terminated "Because of" His Disability.

Not only has Plaintiff failed to offer any evidence of a perceived disability, but he has also failed to offer any evidence that he was terminated *because of* any alleged disability.  During his deposition, Plaintiff testified that he believed he was terminated because of his shoulder surgery (SOF No. 61), yet he offered no support for this belief, aside from the fact of the surgery itself, and that his HP supervisor did not get him a helper. (SOF No. 62.)  As discussed above, Synova was not aware of Plaintiff's alleged request, or of his alleged need for help. (SOF Nos. 39, 41, 43.)

Moreover, Plaintiff conceded that, prior to his termination, he did not feel as though he was being treated poorly because of his injury:

Q: …[B]efore you were terminated, did you feel that you had been discriminated against in any way because of your injury?

A: No. Not prior to my termination.

Q: And so prior to your termination, you never complained to anybody at Synova or at HP or at American Express that you thought you were being discriminated against; correct?

A: Yes.

\*\*\*

Q: And you never told anybody at any of these companies before your termination that you thought you were being mistreated in any way because you had become injured; correct?

A: Correct.

(SOF No. 63.)

Simply put, Plaintiff has offered no evidence to support his claim that his termination was "caused" by his disability. It is well established that *timing alone is not enough* to establish discrimination. *See, e.g., Nelson v. Pima Comm. College,* 83 F.3d 1075, 1081 (9th Cir. 1996) ("[Plaintiff's] claim that she did one thing and subsequently the [adverse action] happened to her, is … insufficient to allow an inference [of causation]."); *Caudill v. Farmland Ind., Inc.*, 919 F.2d 83, 86-87 (8th Cir. 1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal connection between the two events, in light of other evidence presented).

Plaintiff has not offered any concrete allegations as to how the termination was related to his alleged disability.  Because Plaintiff "cannot rest merely on conclusory allegations, improbable inferences, and unsupported speculation," his discrimination claim should be dismissed. *See, e.g., Nelson v. United Technologies*, 74 Cal.App.4th

13

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

597, 614 (1999) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998).)

Based on the foregoing, Plaintiff cannot establish causation because he has no evidence that he was terminated "because of" his alleged or perceived disability. Moreover, Plaintiff cannot establish that even if HP terminated him because of his alleged or perceived disability, that Synova participated in such discrimination, and/or was aware of such discriminatory acts.

### 3. Plaintiff Has Offered No Evidence to Support His Claim That He Was Discriminated Against for Taking Medical Leave.

In his Second Cause of Action for Medical Leave Discrimination, Plaintiff alleges that Synova "discouraged Plaintiff from taking and denied Plaintiff medical leave." However this allegation is refuted by Plaintiff's own testimony. Plaintiff testified that no one at Synova, HP or Amex ever discouraged him from taking medical leave for his surgery. (SOF No. 55.) Further, Plaintiff testified that he was never denied any requested time off for medical treatment. (SOF Nos. 46, 47, 50.)

Even if HP terminated Plaintiff because he took medical leave, there is no evidence that Synova participated in such discrimination, and/or was aware of such discriminatory acts.

### 4. Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff.

Here, even if Plaintiff could establish a *prima facie* case of disability discrimination, Defendant would still prevail because, as explained *supra,* Synova and HP had a legitimate, non-discriminatory, reason for terminating Plaintiff (SOF Nos. 2, 7, 8, 9, 12, 13, 20, 21, 25, 27) and there is no evidence of pretext.

As is evidenced by the communications between Ms. Arrowood, Mr. Green and Mr. Robinson, HP's impending two-year mark was being discussed more than a month before Plaintiff's termination. (SOF Nos. 20, 21.)

As courts have recognized, a decision to terminate may be foolish, trivial, unwise, or entirely baseless; it just cannot be discriminatory. *See Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 358 (2000). Summary judgment for an employer is appropriate where "given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive . . . is too weak to raise a rational inference that discrimination occurred." *Id.* at 362. Here, there is no way for Plaintiff to establish pretext – especially in light of the fact that Mr. Zedaker was also let go in April 2011 because of the same two-year limitation on employment. (SOF No. 26.)

Plaintiff has not produced, and cannot produce any "specific, substantial evidence" of pretext to support his allegation that Defendant discriminated against him based on his alleged or perceived disability. Furthermore, Plaintiff has not, and cannot, produce any evidence that Synova knew, or should have known, that HP's instruction to terminate him was pretextual.

## C. Plaintiff's Claim for Failure to Accommodate Fails Because there is no Evidence that Synova Failed to Accommodate Plaintiff.

It appears that in connection which his First Cause of Action for Disability Discrimination, Plaintiff has also asserted a cause of action for Failure to Accommodate. (SOF No. 64.)

In order to prevail on a claim for Failure to Accommodate, Plaintiff must prove that (1) he had a disability covered by the FEHA; and (2) Synova failed to reasonably accommodate his disability. *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 256 (2000); *Bagatti v. Dept. of Rehab.*, 97 Cal.App.4th 344, 360-361 & n. 4 (2002)). Here Plaintiff cannot, nor does he even attempt to, provide any evidence that Synova denied him any accommodation. In fact, during his deposition, Plaintiff admitted that he never asked for any accommodations *from Synova*. (SOF Nos. 37, 39, 41, 43.) He also

admitted that he never informed Synova about the request for a "helper" he had made to Ms. Cook at HP. (SOF No. 41.)  Synova also had no reason to know that Plaintiff was receiving assistance from a colleague at Amex. (SOF No. 43.) Plaintiff admits he was never denied any rest breaks or any time off for medical treatments. (SOF No. 47.) Finally, Plaintiff's doctors never gave Plaintiff any work restrictions. (SOF No. 54.)

Simply put, Plaintiff never requested any accommodations from Synova, and therefore Synova did not fail to accommodate him. Synova did not know, and had no reason to know, of the accommodations which Plaintiff had requested from HP. Accordingly, Plaintiff cannot sustain this allegation against Synova.

### D. Plaintiff's Claim for Failure to Engage in the Good Faith Interactive Process Fails Because there is No Evidence that Synova Failed to Engage in the Interactive Process.

It appears that in connection which his First Cause of Action for Disability Discrimination, Plaintiff has also asserted a cause of action for Failure to Engage in the Interactive Process.  (SOF No. 65.)

*California Government Code* section 12940(n) provides that it shall be an unlawful employment practice "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, <u>in a response to a request for reasonable accommodation</u> by an employee or applicant with a known physical . . . disability or known medical condition."  (Emphasis added.)

Given the fact that no one at Synova was not aware that Plaintiff required any accommodations (SOF Nos. 37, 39, 41, 43), it is allege that Synova refused to discuss Plaintiff's needs with him.  Accordingly, Plaintiff cannot sustain this allegation against Synova.

///

///

16

**E. In Addition to Synova's Lack of Knowledge, Plaintiff's Causes of Actions for Retaliation Fail Because: 1) Plaintiff Cannot Establish Causation; and 2) Defendant Had a Legitimate, Non-Discriminatory Reason to Terminate and There is no Evidence of Pretext.**

To establish a *prima facie* case of retaliation[4] under FEHA, the employee must prove that (1) he engaged in a protected activity; (2) the employer subjected him to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action. *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997).

> **1. Plaintiff Has Offered No Evidence to Support His Claim That He Was Retaliated Against "Because" he Requested and Took Medical Leave.**

Plaintiff cannot establish the third element of his claim for retaliation in his Second Cause of Action: that he was retaliated against "because" he requested and took medical leave. Here, there is no causal link because Plaintiff was clearly subject to HP's two-year policy as relates to contingent employees. (SOF Nos. 2, 7, 8, 9, 12, 13, 20, 21, 25, 27.)   Plaintiff can point to no evidence – because there is none – that the true motivation for terminating Plaintiff was Plaintiff having engaged in any protected activity (such as taking a medical leave, sustaining an industrial injury and/or filing a Workers' Compensation claim).

Summary judgment would still be warranted even if Plaintiff were able to establish a prima facie case of retaliation. "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *McRae v. Dept. of Corrections and Rehabilitation*, 142 Cal. App. 4th 377, 388 (2006). "If the employer produces a legitimate reason for the

---

[4] Plaintiff has brought two causes of action for retaliation: his Second Cause of Action is for Retaliation (which he has combined with a cause of action for Medical Leave Discrimination), and his Third Cause of Action is for Retaliation for Opposing Violations of FEHA.  In order to avoid redundancy, Synova will address both of Plaintiff's Retaliation Causes of Action in this section.

adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to provide intentional retaliation." *Id.* Summary judgment for an employer is appropriate where "'given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive' or retaliation is 'too weak to raise a rational inference that discrimination occurred.'" *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 358 (2000). Even where the employer's decision was mistaken, wrong, too harsh, unwise or baseless, that still does not show pretext for illegal retaliation. See *McRae*, 142 Cal. App. 4th at 388.

Given HP's policy relating to its contingent workforce, as well as the fact that this policy was, and is, applied to all contingent employees, there is no doubt as to the legitimacy of Synova and HP's reason for the termination. (SOF Nos. 2, 7, 8, 9, 12, 13, 20, 21, 25, 27.)  Consequently, summary adjudication as to Plaintiff's Second Cause of Action for Retaliation should be granted.

### 2. Plaintiff Has Offered No Evidence to Support his Claim that he Opposed Violations of FEHA.

Plaintiff's Third Cause of Action for Retaliation alleges that Plaintiff was terminated after he "opposed practices … forbidden by FEHA." (SOF No. 66.) Plaintiff cannot establish the first element of his retaliation claim, that he engaged in a protected activity.

Plaintiff's own deposition testimony contradicts the allegations in his Complaint.  Plaintiff testified that prior to his termination, he did not feel as though he was discriminated against. (SOF No. 59.) He also testified that prior to his termination, he never told anyone that he thought he had been mistreated in any way because of his injury.  (SOF No. 63.)

Thus, since Plaintiff never "opposed" anything related to FEHA prior to his termination, he could not have been terminated in retaliation for such "opposition."

And, even if Plaintiff could somehow show that he had opposed FEHA violations, he cannot show that Synova knew, or had reason to know, of such opposition. (SOF No. 63.)   Assuming, *in arguendo*, that Plaintiff could show that Synova knew, or had reason to know, of any alleged opposition to FEHA violations, Plaintiff simply cannot rebut the legitimate non-retaliatory reason for terminating his employment. (SOF Nos. 2, 7, 8, 9, 12, 13, 20, 21, 25, 27.) Summary judgment as to Plaintiff's Third Cause of Action is therefore warranted.

### F. In Addition to Synova's Lack of Knowledge, Plaintiff's Cause of Action for Failure to Prevent Harassment and Discrimination Fails for the Same Reasons as the Discrimination Claim.

Plaintiff claims that Defendant failed to take reasonable steps to prevent harassment and discrimination.  First, Plaintiff has failed to allege a cause of action for harassment, so prevention of it is irrelevant. Second, as discussed previously, Plaintiff cannot succeed on his causes of action for Discrimination; consequently, this cause of action must also fail.  *See Trujillo v. North Co. Transit Dist.*, 63 Cal.App.4th 280, 289 (1988) (finding no liability for failure to prevent discrimination or harassment when no underlying harassment or discrimination is found).

### G. In Addition to Synova's Lack of Knowledge, Plaintiff's Cause of Action for Wrongful Termination in Violation of Public Policy Fails for the Same Reasons that His First, Second and Third Causes of Action Fail.

Plaintiff asserts that Defendant violated public policy by terminating him because he took medical leave, filed a Workers' Compensation claim and on the basis of his disability. (SOF No. 67.)  For the reasons set forth above, Plaintiff cannot establish either his discrimination or retaliation claims, therefore, his claim for Wrongful Termination in Violation of Public Policy must also fail.  *Taub v. Fleishman-Hillard, Inc.*, No. C-04-2316 VRW, 2005 WL 2988755, *23 (N.D. Cal.Nov. 7, 2005) ("If an employer has not violated FEHA, the employee's claim for

19

wrongful discharge in violation of public policy based on FEHA fails.")

### H. Plaintiff Cannot Recover Punitive Damages Because There is No Clear And Convincing Evidence That Defendant is Guilty of Malice, Fraud, or Oppression.

To recover punitive damages, Plaintiff must do more than prevail on his claims. He bears the "onerous" burden of proving "by clear and convincing evidence" that Defendant was "guilty of oppression, fraud or malice." *Aquino v. Superior Court*, 21 Cal.App.4th 847, 857 (1993); Cal. Civil Code § 3294(a). "When a motion for summary judgment is made in a case where the plaintiff's claim carries a clear and convincing burden of proof, the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard." *Rowe v. Sup. Court,* 15 Cal.App.4th 1711, 1724 (1993) *citing, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986).

The California Supreme Court defines "clear and convincing evidence" as "a finding of high probability . . . [such] that the evidence be 'so clear as to leave no substantial doubt' [and which is] 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" *In Re Angelica P.*, 29 Cal.3d 908, 919 (1981); *Broadman v. Comm'n on Judicial Perf.*, 18 Cal.4th 1079, 1090 (1998).

California law also requires that oppression and malice require a finding of "despicable conduct." Cal. Civil Code § 3294(c)(1) and (2). As to that requirement, the California Supreme Court explained in *College Hospital v. Superior Court of Orange County*, 8 Cal.4th 704, 725 (1999), "[u]sed in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' 'contemptible.'" (citations omitted.) As amended to include this term, the statute plainly indicates that absent an intent to injure the plaintiff, 'malice' requires more than a 'willful and conscious' disregard of the plaintiff's interests. The additional component of 'despicable' conduct must be found."

20

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

The discussion herein demonstrates the total absence of evidence from which liability can be found let alone oppression, fraud or malice.  Even when viewed in its best light, Plaintiff's evidence falls far short of the "clear and convincing" standard set by Cal. Civil Code § 3294(a) as a matter of law.

## IV.   CONCLUSION

Based on the foregoing, Defendant Synova, Inc. respectfully that the Court grant its motion for summary judgment in its entirety. Alternatively, Defendant requests that the Court grant Summary Adjudication as to those claims the Court finds to be without merit as a matter of law.

DATED: October 5, 2012

BRAGG & KULUVA

By: _____
JILL F. TEITELBAUM
Attorneys for Defendant
SYNOVA, INC.

NOTICE OF MOTION AND MOTION OF DEFENDANT SYNOVA, INC. FOR SUMMARY
JUDGMENT/PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES